## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MARYLAND

-------------------------------------------------------------X
                              :

MICHAEL CARTON, CYNTHIA FINNK,      :
ROCCO LANO, LAURINA LEATO, MARILYN  :
LISTANDER and ROGER MAMMON,      :      No.
                              :

          Plaintiffs,          :
                              :      **JURY TRIAL DEMANDED**

          v.               :

DAP PRODUCTS, INC., NATIONAL EXPRESS, :
INC., and RPM INTERNATIONAL, INC.     :
                              :

          Defendant.         :
-------------------------------------------------------------X

## CLASS ACTION COMPLAINT

Plaintiffs Michael Carton, Cynthia Finnk, Rocco Lano, Laurina Leato, Marilyn Listander and Roger Mammon (collectively "Plaintiffs"), on behalf of themselves and all persons similarly situated, by and through their attorneys, allege as follows.

## INTRODUCTION

1.     This is a class action brought by Plaintiffs, individually and on behalf of all other similarly situated consumers who purchased an XHose or XHose Pro (hereinafter referenced interchangeably as "XHose") product manufactured, marketed, distributed, or sold by DAP Products, Inc. ("DAP"), National Express, Inc. ("National Express") and/or RPM International, Inc. ("RPM") (collectively the "Defendants"). Defendants advertised the XHose as being an expandable, lightweight garden hose that was tough, durable, and long-lasting. Defendants further advertised the XHose as being able to both expand and contract without "kinking," as experienced with typical garden hoses.

2.     As compared to more traditional rubber garden hoses, the XHose is constructed

of a thin cloth layer exterior and a thin plastic internal tube interior.  By virtue of this design, Defendants claim that the benefit of the XHose is that it is able to contract when there is no water in the hose, providing for easier storage.

3.      Defendants' marketing and packaging states that the XHose is tough, durable, and long-lasting.  Contrary to Defendants' representations, however, the XHose is defective and predisposed to leaking, bursting, seeping, and dripping due to no fault of the consumer.

4.      Defendants knew, or should have known, that the XHose is defective and not fit for its ordinary and intended purpose as a garden hose.  Defendants, however, actively concealed this material fact from Plaintiffs and the members of the Class.

5.      Despite their active concealment of the defect and the numerous internet complaints regarding the XHose, Defendants continue to market and sell the XHose to consumers throughout the United States, causing them millions of dollars in damages.

## PARTIES

### *Plaintiffs*

6.      Plaintiff Michael Carton ("Plaintiff Carton") is a citizen of the state of Wisconsin and currently resides in Elm Grove, Wisconsin.   In June 2014, Plaintiff Carton purchased two 75' XHoses from an Ace Hardware store in Wisconsin.  Plaintiff Carton made the decision to purchase the XHoses based on Defendants' representations that the XHoses would be tough, durable, and last a long time before they needed to be replaced. Plaintiff Carton chose the XHose over comparable products because of these representations, even though the XHose was significantly more expensive than comparable hoses in the marketplace. Within thirty days of purchasing the XHoses, on its third use, one of Plaintiff Carton's XHoses failed when the internal rubber hose separated at the brass fitting. Plaintiff Carton returned the defective XHose to the Ace Hardware store where he had purchased it and received a replacement XHose. In July

2014, both the replacement XHose and the other original XHose failed when the interior hoses burst. As a result, all three of Plaintiff Carton's XHoses are no longer suitable for use as garden hoses.

7.      Plaintiff Cynthia Finnk ("Plaintiff Finnk") is a citizen of the state of Florida and currently resides in Tampa, Florida.   In December 2013, Plaintiff Finnk purchased one 75' XHose Pro ("Hose 1") from XHosepro.com and received a second XHose Pro free ("Hose 2"). Plaintiff Finnk made the decision to purchase Defendants' XHose based on Defendants' representations that the hose would be tough, durable, and last a long time before it needed to be replaced.   In or around May 2014, Hose 1 exploded in the center while in use.  On May 23, 2014, Plaintiff Finnk called the number provided with her purchase (the "Complaint Number") seeking a refund but was informed by the representative with whom she spoke, "Elizabeth," that the 90-day refund period had expired.  Elizabeth agreed to send Plaintiff Finnk two replacement XHose Pros ("Hose 3" and "Hose 4").   In or around June 2014, Hose 2 exploded in the center while in use.  On June 12, 2014, Plaintiff Finnk again contacted the Complaint Number and spoke with "Taisha," who agreed to send two additional replacement XHose Pros ("Hose 5" and "Hose 6"). Hoses 3, 4, 5, and 6 all exploded in the center while in use shortly thereafter.  On June 20, 2014, Plaintiff Finnk yet again contacted the Complaint Number and spoke with "Steve," who agreed to send two more replacement XHose Pros ("Hose 7" and "Hose 8").  In or around July 2014, Hoses 7 and 8 exploded in the center while in use.  On July 18, 2014, Plaintiff Finnk contacted the Complaint Number for the fourth time, again speaking with "Steve."  Plaintiff Finnk reiterated her request for a refund, explaining that all 8 hoses she had received had burst.  Steve refused to refund her money, instead agreeing to send two more replacement XHose Pros ("Hose 9" and "Hose 10") but informing Plaintiff Finnk that she would not be provided any additional

replacement hoses. As of the date of this filing, neither Plaintiff Finnk nor anyone else has attempted to use Hoses 9 and 10.

8.      Plaintiff Rocco Lano ("Plaintiff Lano") is a citizen of the state of Delaware and currently resides in Wilmington, Delaware. In February 2013, Plaintiff Lano purchased one 50' XHose ("Hose 1") from xhose.com and received a second XHose for the cost of shipping and handling ("Hose 2"). Plaintiff Lano made the decision to purchase Defendants' XHose based on Defendants' representations that the hose would be tough, durable, and last a long time before it needed to be replaced. However, Hose 1 blew out at the fitting where it connected to the faucet. Plaintiff Lano contacted the Complaint Number and was provided a replacement hose ("Hose 3") approximately three weeks later. In order to receive the replacement hose, Plaintiff Lano was required to ship the defective hose back at his own expense. Hose 2 blew out at the on/off valve approximately two days after Hose 1 malfunctioned, and Hose 3 blew out in the center shortly thereafter. Plaintiff Lano again contacted the Complaint Number and, to replace the defective Hose 2, was sent two 25' XHoses ("Hose 4" and "Hose 5"). Hose 4 arrived with a crushed brass faucet connector and Hose 5 soon blew out in the center during use. As a result, Plaintiff Lano's XHoses are no longer suitable for use as garden hoses.

9.      Plaintiff Laurina Leato ("Plaintiff Leato") is a citizen of the state of Illinois and currently resides in Midlothian, Illinois. In September 2012, Plaintiff Leato purchased two 50' XHoses and an XHose Holder from xhose.com. In July 2013, Plaintiff Leato purchased one 25' XHose from a Menard's retail store in Crestwood, Illinois. Plaintiff Leato made the decision to purchase Defendants' XHose based on Defendants' representations that the hose would be tough, durable, and last a long time before it needed to be replaced. Within months of first use, however, the inner hose on each of the three XHoses Plaintiff Leato purchased began leaking at

the connection to the coupling, rendering the XHoses no longer suitable for use as garden hoses. When Plaintiff Leato contacted Defendant National Express Online, she was told that she was not entitled to a refund of the purchase price or replacements for the defective hoses because the 90-day warranty on the products had expired.

10.     Plaintiff Marilyn Listander ("Plaintiff Listander") is a citizen of the state of Texas and currently resides in Round Rock, Texas.   In or around 2012, Plaintiff Listander purchased two 50' XHoses and received two free hoses (respectively "Hose 1," "Hose 2," "Hose 3," and "Hose 4") from xhose.com and by calling the number on a television advertisement she viewed.   Plaintiff Listander made the decision to purchase Defendants' XHose based on Defendants' representations that the hose would be tough, durable, and last a long time before it needed to be replaced.   Hoses 1 and 2 both failed within six weeks of their first use when they split open at the sewn seam running along the side of the hose.   Plaintiff Listander then began using Hoses 3 and 4, both of which also split open at the same seam within a similar time period. Plaintiff Listander contacted the Complaint Number and was eventually provided four replacement hoses ("Hose 5," "Hose 6," "Hose 7," and "Hose 8").   Hoses 5, 6, 7, and 8 all experienced the same failure as Hoses 1-4 within six weeks of first use.   Despite these failures, and because Plaintiff Listander found the product to be effective as a garden hose prior to these uniform failures, Plaintiff Listander purchased a 50' XHose Pro and received a second XHose Pro for free ("Hose 9" and "Hose 10").   Both of the XHose Pros experienced the same failure as every previous XHose Plaintiff Listander had purchased within two months of their first use. Plaintiff Listander again contacted the Complaint Number and was provided two replacement hoses ("Hose 11" and "Hose 12").   Hoses 11 and 12 also experienced the same failure within two months of their first use.

11.     Plaintiff Roger Mammon ("Plaintiff Mammon") is a citizen of the state of California and currently resides in Oakley, California.   In August 2013, Plaintiff Mammon purchased one 50' XHose Pro ("Hose 1") from xhose.com and received a second 50' XHose Pro ("Hose 2") for the cost of shipping and handling.   Plaintiff Mammon made the decision to purchase Defendants' XHose based on Defendants' representations that the hose would be tough, durable, and last a long time before it needed to be replaced.   In July 2014, after only being used approximately 12 times, Hose 1 failed during use while connected to Hose 2.   Specifically, the expandable, interior hose in Hose 1 suddenly separated from the brass lining and contracted, damaging Hose 1 and rendering it no longer suitable for use as a garden hose.

*Defendants*

12.     Defendant DAP Products, Inc. ("DAP") is a Delaware corporation with its headquarters and principal place of business located at 2400 Boston Street, Suite 200, Baltimore, MD 21224-4775.   Defendant is a leading manufacturer and supplier of caulks, sealants, construction adhesives, insulating foams, spackling, glazing and other general home care and improvement products.   Defendant designs, manufactures, and sells its products, including the XHose, through Defendant National Express, Inc., DAP's own interactive website and a nationwide distribution network, as well as through traditional brick-and-mortar retail stores and national retailers such as Walmart, Home Depot, Target, Menards and Ace Hardware, among others.

13.     Defendant National Express, Inc. is a Connecticut corporation with its headquarters and principal place of business at 2 Morgan Avenue, Norwalk, Connecticut 06851. National Express is described on its website (http://www.nationalexpresstv.com) (last visited September 12, 2014) as "an independently owned direct response company focusing on bringing

products directly to consumers via Television, Internet, Print, Mail Order, and Retail. Founded in 1981, it is one of the oldest and most respected companies in the direct response industry. National Express, Inc. has a long history of working closely with inventors, suppliers, and corporations…." National Express further states on its website that the company "has the expertise and experience as well as the dedication to the consumer with unparalleled customer support that enables us to quickly and efficiently test and roll-out products." One of National Express's "top selling products" is the XHose. *Id*. On information and belief, National Express was responsible for testing the XHose prior to selling the product to consumers, marketing the XHose and providing customer service to consumers purchasing the XHose.

14.     Defendant RPM International, Inc. ("RPM") is a Delaware corporation with its principal place of business in Medina, Ohio. RPM is a multinational holding company with subsidiaries that manufacture and market high-performance coatings, sealants and specialty chemicals, primarily for maintenance, repair and improvement applications. Defendant DAP is a wholly owned subsidiary of RPM. RPM oversees the work of Defendant DAP and, on information and belief, designed, manufactured, and purposefully caused the XHose to be placed into the stream of commerce within this District and throughout the United States.

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction over this class action pursuant to 28 U.S.C. § 1332, as amended by the Class Action Fairness Act of 2005, because the matter in controversy exceeds $5 million, exclusive of interest and costs, and is a class action in which some members of the Class are citizens of states different than Defendants. *See* 28 U.S.C. § 1332(d)(2)(A).

16.     This Court has personal jurisdiction over Defendant DAP because its corporate headquarters and principal place of business are located in this District.

This Court also has personal jurisdiction over Defendants National Express and RPM because they are authorized to do business and are conducting business throughout the United States, including within this judicial district; Defendants have specifically marketed and sold the XHose in the United States, including this District; and they have sufficient minimum contacts with the various states of the United States and/or sufficiently avail themselves of the markets of the various states of the United States through their promotion, sales, and marketing within the United States, including this District, to render the exercise of jurisdiction by this Court permissible.

17.     Venue properly lies in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the acts giving rise to Plaintiffs' claims occurred in this District, or pursuant to 28 U.S.C. § 1391 (b)(3), as Defendant DAP's headquarters and principal place of business is within this District.

## FACTUAL BACKGROUND

18.     Defendants designed, marketed, distributed, and sold XHoses on television, on the internet and through various retail outlets, including Walmart, Home Depot, Target, Menards and Ace Hardware. Upon information and belief, Defendants have sold tens of millions of dollars' worth of the XHoses.

19.     Unbeknownst to consumers, Defendants' XHoses contain pervasive design and/or manufacturing defect(s) resulting in leaking, bursting, seeping, and dripping. Defendants not only had knowledge of the design and/or manufacturing defects, but actively concealed the defective nature of the XHoses from Plaintiffs and the Class.

20.     Defendants marketed the XHose as a tough, durable, and long-lasting gardening hose. Specifically, Defendants represented on the XHose website that the XHose:

- Is "[s]uper strong and durable yet ultra lightweight;"[1]

- "Absolutely will not twist, tangle, or kink;"[2]

- "EXPANDS up to 3 times its size when water is turned on;"[3]

- "CONTRACTS back in just seconds when water is turned off;"[4]

- Contains a "[t]ough rubber inner hose covered in durable, super-strong webbing;"[5] and

- Is "built strong to last long."[6]



---

[1] *See* www.XHose.com (last visited September 12, 2014).
[2] *Id.*
[3] *Id.*
[4] *Id.*
[5] *Id.*
[6] *Id.* (embedded video at 00:53.  The video further depicts young children safely and easily carrying and handling the hose).



21.      Consistent with their online representations, Defendants' product packaging also contains representations concerning the longevity, durability and performance capabilities of the XHose.  As is reflected on the XHose product packaging, Defendants say that the XHose is:

-Lightweight- Just 1 oz

- Won't Kink!

-Super Strong and Durable!



With respect to the XHose Pro, Defendants represent that the hose is of "Professional Quality,"
that it will produce a "More Powerful Spray" and that it contains "Solid Brass Fittings" and that
it is made of "Durable Material" that is "Stronger Than Ever."



22.     Plaintiffs viewed and relied on Defendant's marketing materials and the
representations on the product packaging prior to purchasing their XHoses and believed
Defendants' representations regarding the durability, strength, longevity and performance

capabilities of the XHoses to be true.

23.     Contrary to Defendants' representations, however, the XHose is not durable or strong, does not last a long time and does not have the performance capabilities Defendants claim.

24.     Indeed, Defendants initially offered a "lifetime guarantee" for the Xhose Pro, warranting that "[i]f it ever fails, we'll replace it!"



25.     Defendants later reduced the "Lifetime Quality Guarantee" for the Xhose Pro to a 90-day money back guarantee.

26.     Defendants' XHose is not fit for its ordinary and intended purpose of a gardening hose as it is prone to leaking, bursting, seeping, and dripping.

27.     Upon information and belief, thousands of purchasers of the XHose have experienced leaking, bursting, seeping, and dripping.  Indeed, the internet is replete with examples of blogs and other websites where consumers have complained of the exact same defects as Plaintiffs.  On Amazon.com, for example, 210 of the 307 customer reviews of the

---

[7] Image available at http://web.archive.org/web/20130817054310/https://www.xhosepro.com/ (last visited September 15, 2014).

XHose, _nearly 70% of all reviews_, gave the product 1 out of 5 stars, lodging multitudinous complaints including the following, which represent only a small smattering of the hundreds of negative reviews (all customer reviews _sic_):

- I bought 2 XHose Pro's over 5 months ago, both of the hoses exploded from within and both are ruined. As instructed in their directions, I turned the hoses off when finished using them at all times. I have tried to call this company repeatedly and to no avail. You only have a 90 day money back guarantee. I would NEVER recommend purchasing this product.[8]

- I ordered two 25' X-Hose; they arrived on time and appeared well made with heavy brass connectors and heavy guage outside material. We followed the directions as printed on tab attached to each hose and both failed miserably upon first usage. After we connected the hose to the water bib we turned on the water (low pressure) and watched the hose expand. Once expanded, we turned off the water, attached the spray handle to the end and turned on the water (again at low pressure). The seam at the end of the hose next at the brass connector sprung a huge leak when the water reached the nozzle. The leak was approximately 6" long and growing until we turned off the water. I examined the hose and htere were no tears in the outside material so I assumed the failure was on the inside of the hose. We took out the second hose, followed thedirections on the attached tab and the same results occurred. The hoses had been purchased approximaely two months ago and placed in the garage cabinet. I would NOT recommend this hose to anyone; it is a complete failure!![9]

- Bought 2 XHose pro's with the metal fitting. One exploded after 4 uses while washing my car the other is leaking around the fitting. I had owned 2 with the plastic fitting both broke as well.[10]

- GARBAGE!!! Bought three of these and two burst within one day. Followed the directions to the letter. Sending them back and will continue to use the bulky, heavy and less flexible rubber hoses that I've had for years. At least they last.[11]

- I bought 2 of these hoses and received 4 total with a new promotion. Within a

---

[8] _See_ http://www.amazon.com/09114-XHose-50-Feet-Incredible-Expanding/product-reviews/B00AOVH60M/ref=cm_cr_pr_hist_1?ie=UTF8&filterBy=addOneStar&showViewpoints=0&sortBy=bySubmissionDateDescending, posted on July 23, 2014.

[9] _Id._, posted on July 21, 2014.

[10] _Id._, posted on July 21, 2014.

[11] _Id._, posted on July 20, 2014.

few months of very light usage all 4 of the hoses developed leaks and FAILED catastrophically. Great concept but not completely worked out if you ask me.[12]

- Hose outer layer torn by itself and the hose exploded after 2 weeks of use. Followed all of manufacturer's instructions and deflated it after every use. Complete waste of money.[13]

- I bought the hose and on the 3rd use it filled up and expanded and then blew up right in the middle. Scared the heck out of me. I thought it was a cannon going off it was so loud. What a joke! So much for expandable hoses. I'm going back to the original rubber hoses! What a waste of time and money. Maybe if manufacturers took a little more time with their product and cared about consumers they wouldn't be mass producing garbage and ripping off the consumer!!! Thanks Dap. Real good job!!![14]

28.     Consumer complaints regarding the XHose on the Home Depot website are strikingly similar, with 36 of 52 reviews giving the product 1 out of 5 stars, consistently noting issues with leaking, seeping, and bursting.[15]

29.     Defendants were, and still are, under a continuing duty to disclose the defective nature of the XHose to consumers.  Defendants have actively concealed the existence and nature of the defect in the XHose from Plaintiffs and the Class.

30.     Defendants have caused and are continuing to cause Plaintiffs, as well as members of the Class, to pay money to repair or replace Defendants' defective XHoses.

## CLASS ACTION ALLEGATIONS

31.     This action is brought on behalf of Plaintiffs, individually and as a class action, pursuant to FED. R. CIV. P. 23(a), 23(b)(2) and/or 23(b)(3) on behalf of a nationwide class of consumers.  Specifically, the nationwide class consists of:

> All persons in the United States who purchased a DAP XHose (the "Nationwide Class" or "Class").

---

[12] *Id.*, posted on July 18, 2014.
[13] *Id.*, posted on June 21, 2014.
[14] *Id.*, posted on June 18, 2014.
[15] *See* http://www.homedepot.com/p/DAP-3-4-in-x-50-ft-XHOSE-Pro-Expandable-Water-Hose-7079899104/205144009 (last visited September 12, 2014).

Excluded from the Nationwide Class are Defendants, any entity in which Defendants have a controlling interest or which has a controlling interest in Defendants, and Defendants' legal representatives, assigns and successors.   Also excluded are the judge to whom this case is assigned and any member of the judge's immediate family.

32.     In the alternative to the Nationwide Class, and pursuant to FED. R. CIV. P. 23(c)(5), Plaintiffs seek to represent the following state subclasses:

- All persons in California who purchased a DAP XHose (the "California Class")

- All persons in Delaware who purchased a DAP XHose (the "Delaware Class")

- All persons in Florida who purchased a DAP XHose (the "Florida Class")

- All persons in Illinois who purchased a DAP XHose (the "Illinois Class")

- All persons in Texas who purchased a DAP XHose (the "Texas Class)

- All persons in Wisconsin who purchased a DAP XHose (the "Wisconsin Class")

Excluded from the California, Delaware, Florida, Illinois, Texas and Wisconsin Classes are Defendants, any entity in which Defendants have a controlling interest or which has a controlling interest in Defendants, and Defendants' legal representatives, assigns and successors.   Also excluded are the judge to whom this case is assigned and any member of the judge's immediate family.

33.     The rights of each member of the Class were violated in a similar fashion based upon Defendants' uniform actions.

34.     This action has been brought and may be properly maintained as a class action for the following reasons:

- a. <u>Numerosity</u>: Members of the Class are so numerous that their individual joinder is impracticable.   Plaintiffs are informed and believe, and on that basis allege,

that the proposed Class contains thousands of members. Upon information and belief, Defendants marketed and sold XHoses to tens, if not hundreds, of thousands of consumers throughout the United States. The Class is therefore sufficiently numerous to make joinder impracticable, if not impossible. The precise number of Class members is unknown to Plaintiffs.

b.  <u>Existence and Predominance of Commons Questions of Fact and Law</u>: Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting individual Class members. These common legal and factual questions include, but are not limited to, the following:

    i.  whether Defendants' XHose is defective;

    ii.  whether Defendants knew the XHose was defective;

    iii.  whether Defendants intentionally concealed or failed to disclose to Plaintiffs and the Class the inherent nature of the defect in the XHoses;

    iv.  whether Defendants had a duty to Plaintiffs and the Class to disclose the inherent defect in the XHoses, and whether Defendant breached that duty;

    v.  whether a reasonable consumer would consider the defective nature of the XHose to be material in deciding to purchase the XHose;

    vi.  the appropriate nature of class-wide equitable relief; and

    vii.  the appropriate measurement of restitution and/or measure of damages to award to Plaintiffs and members of the Class.

These and other questions of law or fact common to the members of the Class predominate over any questions affecting only individual members of the Class.

    c.  Typicality: Plaintiffs' claims are typical of the claims of the Class since Plaintiffs purchased XHoses that were designed, manufactured, and marketed by Defendants as being tough, durable, and long-lasting, as did each member of the Class. Furthermore, Plaintiffs and all members of the Class sustained monetary and economic injuries arising out of Defendants' wrongful conduct. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all absent class members.

    d.  Adequacy: Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the Class they seek to represent; they have retained counsel competent and highly experienced in complex class action litigation; and they intend to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

    e.  Superiority: A class action is superior to other available means of fair and efficient adjudication of the claims of Plaintiffs and members of the Class. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct. It would be virtually impossible for members of the Class individually to effectively redress the wrongs done to them. Even if the members of the Class could afford such individual litigation, the court system could not. Individualized litigation

presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

f. <u>Ascertainibility</u>: Class members are readily ascertainable, and can be identified by Defendants' records. Upon information and belief all (or nearly all) class members can be identified by Defendants' business records.

g. Defendants have acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the class as a whole.

### VIOLATIONS ALLEGED

### COUNT I
### VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT, 815 ILCS § 505/2, *et seq.* (by Plaintiff Leato, individually and on behalf of the Illinois Class)

35. Plaintiffs re-allege and incorporate by reference paragraphs 1-34 above.

36. Plaintiff Leato brings this Count individually and on behalf of the Illinois Class.

37. The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") 815 ILCS 505/2, prohibits unfair or deceptive acts or practices in connection with any trade or commerce, including, among other things, "the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact,...whether any person has in fact been misled, deceived, or damaged thereby." The

ICFA also prohibits suppliers from representing that their goods are of a particular quality or grade that they are not.

38.     Defendants' misrepresentations and material omissions, identified above, constitute unfair competition or unfair, unconscionable, deceptive, fraudulent or unlawful acts or business practices in violation of the ICFA.

39.     Defendants' deceptive or unfair practices took place in the course of trade and commerce.

40.     Defendants intended for Plaintiff Leato and the Illinois Class to rely on these deceptive and unfair practices when Plaintiff Leato and the Illinois Class purchased the XHose.

41.     Plaintiff Leato and the Illinois Class have suffered injuries in fact and actual damages, including financial losses resulting from overpayment for the XHose due to Defendant's violations of the ICFA, as alleged herein.  These injuries are of the type the ICFA was designed to prevent and are the direct and proximate result of Defendants' unlawful conduct.

## COUNT II
### VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW, CAL. BUS. & PROF. CODE § 17200, *et seq.*
### (by Plaintiff Mammon, individually and on behalf of the California Class)

42.     Plaintiffs re-allege and incorporate by reference paragraphs 1-34 above.

43.     Plaintiff Mammon brings this count individually and on behalf of the California Class.

44.     Under the California Unfair Competition Law (the "UCL"), "any unlawful, unfair or fraudulent business act or practice" constitutes unfair competition.

### *Fraudulent Acts and Practices*

45.     Any business act or practice that is likely to deceive members of the public constitutes a fraudulent business act or practice under the UCL.

46.     Defendants have engaged in conduct that is likely to deceive members of the public.  Specifically, Defendants have falsely claimed that the XHose is tough, durable, and long-lasting when it is in fact defective, prone to leaking, seeping, and bursting and is not fit for its ordinary and intended purpose as a garden hose.

47.     By committing the acts alleged above, Defendants have engaged in fraudulent business acts and practices constituting unfair competition within the meaning of Cal. Bus. & Prof. Code §17200.

### *Unlawful Acts and Practices*

48.     The violation of any law constitutes an unlawful business practice under Cal. Bus. & Prof. Code §17200.

49.     Defendants' conduct violates Section 5 of the Federal Trade Commission ("FTC") Act, 15 U.S.C. § 45, which prohibits unfair methods of competition and unfair or deceptive acts or practices in or affecting commerce.  By representing that the XHose is tough, durable, and long-lasting when in fact it is defective, prone to leaking, seeping, and bursting and is not fit for its ordinary and intended purpose as a garden hose, Defendants violated Section 5 of the FTC Act.

50.     By violating the FTC Act, Defendants have engaged in unlawful business acts and practices constituting unfair competition within the meaning of Cal. Bus. & Prof. Code §17200.

### *Unfair Acts and Practices*

51.     Any business practice that offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers constitutes an "unfair" practice under the UCL.

52.     Defendants have engaged, and continue to engage, in unfair business practices. This conduct includes representing that the XHose is tough, durable, and long-lasting when it is in fact defective, prone to leaking, seeping, and bursting and is not fit for its ordinary and intended purpose as a garden hose.

53.     Defendants have engaged in conduct that violates the legislatively declared policies of the FTC Act against committing unfair methods of competition and unfair or deceptive acts or practices in or affecting commerce. In doing so, Defendants gain an unfair advantage over their competitors, whose advertising must comply with the FTC Act.

54.     Defendants' conduct, including misrepresenting the toughness, durability, and longevity of the XHose, is substantially injurious to consumers. Such conduct has caused, and continues to cause, substantial injury to consumers because consumers would not have purchased the XHoses, or paid such a high price for the XHoses, but for Defendants' false representations regarding the XHoses' toughness, durability, and longevity. Consumers have thus overpaid for the XHoses and such injury is not outweighed by any countervailing benefits to consumers or competition.

55.     No benefit to consumers or competition results from Defendants' conduct. Since consumers reasonably rely on Defendants' representations regarding the XHose at the time of purchase, consumers could not have reasonably avoided the injury resulting from the purchase of an XHose that does not actually have the qualities – including toughness, durability, and longevity – represented by Defendants.

56.     By committing the acts alleged above, Defendants have engaged in unfair business acts and practices which constitute unfair competition within the meaning of the UCL.

57. As a result of the conduct described above, Defendants have been unjustly enriched at the expense of Plaintiffs and the California Class.

58. An action for injunctive relief and restitution is specifically authorized under Cal. Bus. & Prof. Code §17203.

59. Wherefore, Plaintiffs pray for judgment against Defendants, as set forth hereafter.

**COUNT III**
**VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW,**
**CAL BUS. & PROF. CODE § 17500,** *et seq.*
**(by Plaintiff Mammon, individually and on behalf of the California Subclass)**

60. Plaintiffs re-allege and incorporate by reference paragraphs 1-34 above.

61. Plaintiff Mammon brings this Count individually and on behalf of the California Class.

62. California Bus. & Prof. Code § 17500 states: "It is unlawful for any … corporation … with intent directly or indirectly to dispose of real or personal property … to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated … from this state before the public in any state, in any newspaper or other publication, or any advertising device, … or in any other manner or means whatever, including over the Internet, any statement … which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

63. Defendants caused to be made or disseminated throughout California and the United States, through advertising materials and the xhose.com website, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to Defendants, to be untrue and misleading to consumers, including Plaintiff Mammon and the other California Class members.

64.     Defendants have violated § 17500 because the misrepresentations and omissions regarding the toughness, durability, and longevity of the XHoses as set forth in this Complaint were material and likely to deceive a reasonable consumer.

65.     Plaintiff Mammon and the other California Class members have suffered an injury in fact, including the loss of money or property, as a result of Defendants' unfair, unlawful, and/or deceptive practices.  In purchasing the XHose, Plaintiff Mammon and the other California Class members relied on the misrepresentations and/or omissions of Defendants' with respect to the toughness, durability, and longevity of the XHoses.  Defendants' representations turned out not to be true because the XHoses are defective, are prone to leaking, seeping, and bursting and are not fit for their ordinary and intended purpose as a garden hose.  Had Plaintiff Mammon and the other California Class members known this, they would not have purchased the XHoses and/or paid as much for them.  Accordingly, Plaintiff Mammon and the other California Class members overpaid for the XHoses and did not receive the benefit of their bargain.

66.     All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Defendants' business.  Defendants' wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, both in the State of California and nationwide.

67.     Plaintiff Mammon, individually and on behalf of the other California Class members, requests that this Court enter such orders or judgments as may be necessary to enjoin Defendants from continuing their unfair, unlawful, and/or deceptive practices and to restore to Plaintiff Mammon and the other California Class members any money Defendants acquired by

unfair competition, including restitution and/or restitutionary disgorgement, and for such other relief set forth below.

## COUNT IV
## VIOLATION OF SONG-BEVERLY CONSUMER WARRANTY ACT FOR BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY, CAL. CIV. CODE §§ 1791.1 & 1792
### (Plaintiff Mammon, individually and on behalf of the California Class)

68.     Plaintiffs re-allege and incorporate by reference paragraphs 1-34 above.

69.     Plaintiff Mammon brings this Count individually and on behalf of the California Class.

70.     Plaintiff Mammon and the other California Class members who purchased the XHose in California are "buyers" within the meaning of Cal. Civ. Code § 1791(b).

71.     The XHoses are "consumer goods" within the meaning of Civ. Code § 1791(a).

72.     Defendants are "manufacturer[s]" of the XHoses within the meaning of Cal. Civ. Code § 1791(j).

73.     Defendants impliedly warranted to Plaintiff Mammon and the other California Class members that the XHoses were "merchantable" within the meaning of Cal. Civ. Code §§ 1791.1(a) & 1792.  However, the XHoses do not have the quality that a buyer would reasonably expect.

74.     Cal. Civ. Code § 1791.1(a) states:

"'Implied warranty of merchantability' or 'implied warranty that goods are merchantable' means that the consumer goods meet each of the following:

(1)     Pass without objection in the trade under the contract description.

(2)     Are fit for the ordinary purposes for which such goods are used.

(3)     Are adequately contained, packaged, and labeled.

(4)     Conform to the promises or affirmations of fact made on the

container or label."

75.     The XHoses would not pass without objection in the trade under the contract description because they are defective, prone to leaking, seeping, and bursting and are not fit for their ordinary and intended purpose as a garden hose.

76.     The XHoses are not fit for their ordinary purposes because they are defective and prone to leaking, seeping, and bursting.

77.     The XHoses are not adequately contained, packaged and labeled because the product containers, packaging and labeling represent that the XHoses are tough, durable, and long-lasting when they are in fact defective, prone to leaking, seeping, and bursting and are not fit for their ordinary and intended purpose as a garden hose.

78.     The XHoses do not conform to the promises or affirmations of fact made on their container or labels because the product containers and labels represent that the XHoses are tough, durable, and long-lasting when they are in fact defective, prone to leaking, seeping, and bursting and are not fit for their ordinary and intended purpose as a garden hose.

79.     Defendants breached the implied warranty of merchantability by manufacturing and selling XHoses that would not pass without objection in the trade under the contract description; are not fit for the ordinary purposes for which such goods are used; are not adequately contained, packaged, and labeled; and do not conform to the promises or affirmations of fact made on their containers or labels.  Furthermore, these defects have caused Plaintiff and the other Class members to not receive the benefit of their bargain and have caused the XHoses to depreciate in value.

80.     As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiff Mammon and the other California Class members received goods whose falsely marketed condition substantially impairs their value to Plaintiff Mammon and the other California Class members.   Plaintiff Mammon and the other California Class members have been damaged as a result of the diminished value of the XHoses.

81.     Pursuant to Cal. Civ. Code §§ 1791.1(d) & 1794, Plaintiff Mammon and the other California Class members are entitled to damages and other legal and equitable relief including, at their election, the purchase price of the XHoses or the overpayment or diminution in value of the XHoses.

82.     Pursuant to Cal. Civ. Code § 1794, Plaintiff Mammon and the other California Class members are entitled to costs and attorneys' fees.

<u>COUNT V</u>
**VIOLATION OF CALIFORNIA CONSUMER LEGAL REMEDIES ACT,**
**CALIFORNIA CIVIL CODE § 1750, *et seq.***
**(on behalf of the California Class)**

83.     Plaintiffs re-allege and incorporate by reference paragraphs 1-34 above as if fully set forth herein.

84.     Plaintiff Mammon brings this Count on behalf of himself and the California Class seeking injunctive relief pursuant to the Consumer Legal Remedies Act, California Civil Code §§ 1750 et seq. ("CLRA").

85.     California Civil Code § 1770(a)(5) specifically prohibits representing that goods "have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have." § 1770(a)(7) further prohibits representing that goods "are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." § 1770(a)(9) prohibits "[a]dvertising goods or services with intent not to sell them as advertised."

86.     Defendants have violated the CLRA by representing that the XHose has characteristics that it does not have and that it is of a particular quality when it is of another, and by advertising the XHose with the intent not to sell the product as advertised.   Specifically, Defendants represented and advertised that the XHose is tough, durable, and long-lasting, when in fact the XHose is defective, prone to leaking, seeping, and bursting, and is not fit for its ordinary and intended use as a garden hose.

87.     Plaintiff Mammon and the California Class Members reasonably relied upon those material misrepresentations.

88.     Pursuant to California Civil Code §§ 1780 and 1781, Plaintiff Mammon and the California Class Members hereby request certification of the California Class, injunctive relief, and attorneys' fees, costs and expenses.

## COUNT VI
## VIOLATION OF THE DELAWARE CONSUMER FRAUD ACT, DEL CODE TIT. 6, § 2511, *et seq.*
### (Plaintiff Lano, Individually and On Behalf of the Delaware Class)

89.     Plaintiffs re-allege and incorporate by reference paragraphs 1-34 above as if fully set forth herein.

90.     Plaintiff Lano brings this count individually and on behalf of the members of the Delaware Class defined above.

91.     The Delaware Consumer Fraud Act ("DCFA"), Del. Code Tit. 6, § 2511, *et seq.* makes unlawful "[t]he act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale, lease or advertisement of any merchandise, whether or not any person has in fact been misled, deceived or damaged thereby."

92.     Defendants' misrepresentations and material omissions regarding the defective nature of the XHose constitute deceptive, fraudulent, and false acts in violation of the DCFA.

93.     Defendants' deceptive, false, and fraudulent acts and omissions took place in the course of the sale and/or advertisement of merchandise.

94.     Defendants intended for Plaintiff Lano and the Delaware Class to rely on these deceptive, false, and fraudulent acts and omissions when Plaintiff Lano and the Delaware Class purchased the XHose.

95.     Plaintiff Lano and the Delaware Class have suffered injuries in fact and actual damages, resulting from Defendants' violation of the DCFA. These injuries are of the type the DCFA was designed to prevent, and are the direct and proximate result of Defendants' unlawful conduct.

## COUNT VII
## VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT,
## FLA. STAT. § 501.201, *et seq.*
### (Plaintiff Finnk, Individually and on behalf of the Florida Class)

96.     Plaintiffs re-allege and incorporate by reference paragraphs 1-34 above as if fully set forth herein.

97.     Plaintiff Finnk brings this count individually and on behalf of the members of the Florida Class defined above.

98.     The Florida Deceptive and Unfair Trade Practices Act ("DUTPA"), Fla. Stat. § 501.201, *et seq.* makes unlawful any "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."

99.     Defendants' misrepresentations and material omissions regarding the defective nature of the XHose constitute unconscionable, unfair, and deceptive acts or practices in violation of the DUTPA.

100.    Defendants' unconscionable, unfair, and deceptive acts and omissions took place in the conduct of trade or commerce.

101.    Defendants intended for Plaintiff Finnk and the Florida Class to rely on these unconscionable, unfair, and deceptive acts and omissions when Plaintiff Finnk and the Florida Class purchased the XHose.

102.    Plaintiff Finnk and the Florida Class have suffered injuries in fact and actual damages, resulting from Defendants' violation of DUTPA. These injuries are of the type the DUTPA was designed to prevent, and are the direct and proximate result of Defendants' unlawful conduct.

## COUNT VIII
## VIOLATION OF THE TEXAS DECEPTIVE TRADE PRACTICES AND CONSUMER PROTECTION ACT, TEX. BUS. & COM. CODE § 17.41, *et seq.*
### (Plaintiff Listander, Individually and on behalf of the Texas Class)

103.    Plaintiffs re-allege and incorporate by reference paragraphs 1-34 above as if fully set forth herein.

104.    Plaintiff Listander brings this count individually and on behalf of the members of the Texas Class defined above.

105.    The Texas Deceptive Trade Practices and Consumer Protection Act ("DTPA"), Tex. Bus. & Com. Code § 17.41, *et seq.* makes unlawful any "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce."

106.    Defendants' misrepresentations and material omissions regarding the defective nature of the XHose constitute false, misleading, and deceptive acts or practices in violation of the DTPA.

107.    Defendants' false, misleading, and deceptive acts and omissions took place in the course of trade or commerce.

108.    Defendants intended for Plaintiff Listander and the Texas Class to rely on these false, misleading, and deceptive acts and omissions when Plaintiff Listander and the Texas Class purchased the XHose.

109.    Plaintiff Listander and the Texas Class have suffered injuries in fact and actual damages, resulting from Defendants' violation of DTPA. These injuries are of the type the DTPA was designed to prevent, and are the direct and proximate result of Defendants' unlawful conduct.

## COUNT IX
### VIOLATION OF WISC. STAT. ANN. § 100.18: FRAUDULENT REPRESENTATIONS
#### (Plaintiff Carton, Individually and On Behalf of the Wisconsin Class)

110.    Plaintiffs re-allege and incorporate by reference paragraphs 1-34 above as if fully set forth herein.

111.    Plaintiff Carton brings this count individually and on behalf of the members of the Wisconsin Class defined above.

112.    Wisconsin Statutes Annotated § 100.18 makes it unlawful to, *inter alia*, make any "advertisement, announcement, statement or representation of any kind" in connection with the sale of merchandise that contains "any assertion, representation or statement of fact which is untrue, deceptive or misleading."

113.    Defendants' misrepresentations and material omissions regarding the defective nature of the XHose constitute untrue, deceptive, and misleading assertions, representations, and statements of fact in violation of Wisc. Stat. Ann. § 100.18.

114.    Defendants' untrue, deceptive, and misleading assertions, representations, and statements of fact took place in connection with the sale of merchandise.

115.    Defendants intended for Plaintiff Carton and the Wisconsin Class to rely on these untrue, deceptive, and misleading assertions, representations, and statements of fact when Plaintiff Carton and the Wisconsin Class purchased the XHose.

116.    Plaintiff Carton and the Wisconsin Class have suffered injuries in fact and actual damages resulting from Defendants' violation of Wisc. Stat. Ann. § 100.18.  These injuries are of the type Wisc. Stat. Ann. § 100.18 was designed to prevent, and are the direct and proximate result of Defendants' unlawful conduct.

## COUNT X
### BREACH OF THE IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE
#### (On Behalf of the Nationwide Class or, Alternatively, Each State Class)

117.    Plaintiffs re-allege and incorporate by reference paragraphs 1-34 above as if fully set forth herein.

118.    Plaintiffs bring this count on behalf of themselves and the members of the Class against Defendants.

119.    At the time of purchase, Defendants had reason to know of Plaintiffs' and the Class members' particular purpose for purchasing the XHose.

120.    Plaintiffs and the Class members relied on Defendants to design, manufacture, and properly test a suitable gardening hose product, thereby creating an implied warranty that the goods would be fit for such purpose.

121.    The defective XHoses were not fit for these purposes, thereby causing injuries to Plaintiffs and the Class members.

## COUNT XI
## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
### (On Behalf of the Nationwide Class or, Alternatively, Each State Class)

122.    Plaintiffs re-allege and incorporate by reference paragraphs 1-34 above as if fully set forth herein.

123.    Plaintiffs bring this count on behalf of themselves and the members of the Class against Defendants.

124.    At all times mentioned herein, Defendants manufactured and sold the XHose, and prior to the time it was purchased by Plaintiffs and the putative Class, Defendants impliedly warranted to Plaintiffs that the XHose was of merchantable quality and fit for the use for which it was intended.

125.    The XHoses were unfit for their intended use and were not of merchantable quality, as warranted by Defendants, but instead contained a manufacturing or design defect. Specifically, the XHose suffers from a design and/or manufacturing defect because it is prone to leaking, bursting, seeping, and dripping.

126.    As a direct and proximate result of the breach of said warranties, Plaintiffs and the members of the Class suffered and will continue to suffer losses as alleged herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray, on behalf of themselves and members of the Class, that this Court:

A.    determine that the claims alleged herein may be maintained as a class action under Rule 23(a), (b)(2), and/or (b)(3) of the Federal Rules of Civil

Procedure, and issue order certifying the Class or Classes as defined above;

B.      award all actual, general, special, incidental, statutory, punitive and consequential damages to which Plaintiffs and Class members are entitled;

C.      award pre-judgment and post-judgment interest on such monetary relief;

D.      grant appropriate injunctive relief and/or declaratory relief as the Court may deem reasonable; and

E.      award reasonable attorneys' fees and costs; and grant such further and other relief that this Court deems appropriate.

## JURY DEMAND

Plaintiffs, on behalf of themselves and the putative class, demand a trial by jury on all issues so triable.

Dated: December 24, 2014.                          Respectfully submitted,

By:      /s/ James P. Ulwick
         James P. Ulwick (Bar No. 00536)
         Kramon & Graham, P.A.
         One South Street, Suite 2600
         Baltimore, Maryland 21202
         Telephone: (410) 752-6030
         Facsimile: (410) 539-1269
         Email: julwick@kg-law.com

         OF COUNSEL:

         Katrina Carroll
         kcarroll@litedepalma.com
         Kyle A. Shamberg
         kshamberg@litedepalma.com
         LITE DEPALMA GREENBERG, LLC
         Chicago Office
         211 West Wacker Drive
         Suite 500
         Chicago, IL 60606
         Telephone: (312) 750-1265

Joseph G. Sauder
Matthew D. Schelkopf
**CHIMICLES & TIKELLIS LLP**
One Haverford Centre
361 West Lancaster Avenue
Haverford, PA 19041
Telephone: (610) 642-8500
Facsimile: (610) 649-3633
E-mail: JosephSauder@chimicles.com
MatthewSchelkopf@chimicles.com

*Counsel for Plaintiffs and the Class*